**Affirmed and Opinion filed August 6, 2026**



In The

# Fifteenth Court of Appeals

---

## NO. 15-25-00122-CV

---

**STATE OF TEXAS, MAXX JUUSOLA, TRACY MARTIN, AND ALAN CRIDER, Appellants**

**V.**

**CITY OF DALLAS, KIMBERLY BIZOR TOLBERT, IN HER OFFICIAL CAPACITY AS THE CITY MANAGER FOR THE CITY OF DALLAS AND THE STATE FAIR OF TEXAS, Appellees**

---

**On Appeal from the 298th District Court
Dallas County, Texas
Trial Court Cause No. DC-24-14434**

---

### OPINION

Appellant the State of Texas, later joined by appellants Maxx Juusola, Tracy Martin, and Alan Crider (collectively, "Individual Plaintiffs"), sued the City of Dallas, Kimberly Bizor Tolbert, in her official capacity as the interim city manager

of the City of Dallas,[1] (collectively, "City Appellees"), and the State Fair of Texas (the "State Fair"), alleging that they unlawfully prohibited licensed gun holders from carrying handguns onto State Fair grounds. The State and Individual Plaintiffs (collectively, "Appellants") sought declaratory and injunctive relief preventing the City Appellees and the State Fair from implementing the handgun ban. The parties filed cross-motions for summary judgment on all claims. The trial court issued three orders granting the City Appellees and the State Fair's motions, dismissing Appellants' claims with prejudice, and denying Appellants' motion for summary judgment. Appellants appealed all three orders. Because we hold that the State Fair's policy of prohibiting persons from carrying handguns onto its fairgrounds is lawful, we affirm.

## BACKGROUND

The City of Dallas owns Fair Park, which is composed of 277 acres located in Dallas. In 2003, the City contracted to lease Fair Park to the State Fair of Texas, a nonprofit corporation.

The State Fair operates the State Fair of Texas exposition at Fair Park, which is open to the public during September and October of each year, pursuant to the terms of its lease with the City. In February 2024, the State Fair adopted a new policy in its rules of conduct prohibiting patrons from carrying firearms onto fairgrounds. In August of the same year, the Attorney General's Office received complaints from individuals about the new policy, one of which came from Individual Plaintiff Maxx Juusola, asserting this new policy violated the law, including—relevant for our purposes—Section 411.209 of the Texas Government Code. The Attorney General initiated an investigation into these complaints and notified the City that it had

---

[1] Tolbert has since been appointed as Dallas' city manager.

2

violated Section 411.209 and provided it with 15 days to cure the violation. The Attorney General copied the State Fair on the letter. The City responded to the notice asserting that it had not violated Section 411.209.

The State then sued the State Fair, the City, and Tolbert in her official capacity as interim manager of the City. The Individual Plaintiffs later joined the suit on the side of the State through the First Amended Verified Petition, which sought temporary injunctive relief preventing City Appellees and the State Fair from enforcing the State Fair policy banning handguns on Fair Park grounds, among other things. After holding a hearing, the trial court denied the Appellants' request for a temporary injunction. The State filed an interlocutory appeal with this Court and filed a motion for emergency relief requesting that we effectively enter the temporary injunction that the trial court denied. This Court denied the State's request. The State filed a petition for writ of mandamus challenging this Court's decision and another emergency motion for temporary relief, which the Texas Supreme Court denied.

The State requested that this Court dismiss its temporary-injunction interlocutory appeal, which we granted. Appellants then filed a third amended petition in the trial court—the live petition—arguing that the State Fair's announcement of its policy barring handguns on fairgrounds violated Section 411.209 and the right to bear arms under Article I, Section 23 of the Texas Constitution. Appellants also brought an ultra vires claim against Tolbert, arguing that she acted outside her authority when she allegedly allowed the State Fair to publish its policy. Appellants sought declaratory and injunctive relief prohibiting City Appellees and the State Fair from posting Penal Code Section 30.05, 30.06, and 30.07 signs—and any other notice—prohibiting license holders carrying handguns under the authority of Chapter 411 of the Texas Government Code on fairgrounds

3

and from taking any action banning handguns on fair property.

All parties moved for summary judgment, with the City Appellees and the State Fair seeking dismissal of all Appellants' claims and Appellants requesting that the trial court grant summary judgment in Appellants' favor on all issues of liability, injunctive, and declaratory relief. City Appellees and the State Fair also moved to strike specific summary judgment evidence provided by Appellants. The trial court in three orders denied Appellants' motion for summary judgment, granted the State Fair and the City Appellees' summary judgment motions, sustained the State Fair's objections as to Appellants' summary judgment evidence, and dismissed the claims against the State Fair and City Appellees parties with prejudice. Appellants appealed all three orders, seeking reversal of the trial court's judgment below and rendition of judgment in their favor.

## STANDARD OF REVIEW

We review the trial court's order granting summary judgment de novo. *Tex. Dep't of Crim. Just. v. Levin*, 572 S.W.3d 671, 680 (Tex. 2019). "On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law." *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When "the trial court grants one motion and denies the other, the reviewing court should determine all questions presented" and "render the judgment that the trial court should have rendered." *Id.*

We review a trial court's decision to exclude summary judgment evidence for an abuse of discretion. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). "The test for abuse of discretion is 'whether the court acted without reference to any guiding rules and principles' or, stated another way, whether its decision was arbitrary or unreasonable." *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003) (quoting *Downer v. Aquamarine*

4

*Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

ANALYSIS

The State and Individual Plaintiffs[2] raise only one issue on appeal—they contend that they are entitled to summary judgment as a matter of law on their claim that the State Fair and the City violated Texas Government Code Section 411.209 when the State Fair issued its policy barring handguns on Fair Park grounds and the City, as lessor, failed to restrain the State Fair from doing so. Appellants do not challenge the trial court's summary judgment dismissal of their other claims against the City and State Fair.[3] Nor do they challenge the trial court's dismissal of all claims against appellee Tolbert. Appellants have thus waived these issues on appeal. Tex. R. App. P. 38.1(f); *Eriksen v. Nelson*, 708 S.W.3d 302, 307 n.5 (Tex. App.—15th Dist. 2025, no pet.). Accordingly, we consider only the State and Individual Plaintiffs' Section 411.209 claim against the State Fair and the City.

## I. Governmental Immunity Bars the State's and Individual Plaintiffs' Section 411.209 Claim against the City.

Texas Government Code Section 411.209 states in relevant part that

> [A] state agency or a political subdivision of the state may not take any action . . . that states or implies that a license holder who is carrying a handgun under the authority of this subchapter is prohibited from

---

[2] The Individual Plaintiffs in a letter to this Court state that they will rely on the State's briefing and do not intend to file a brief of their own.

[3] One of those claims concerned the Appellants' Article 1, Section 23 right to bear arms claim, wherein Appellants argued that the State Fair and the City "violated this constitutional right by enforcing policies and restrictions that unlawfully prevent licensed handgun holders and law-abiding citizens otherwise not prevented from carrying firearms at the State Fair, where such prohibitions are not legally authorized under law." We note that nothing in our opinion today should be construed as saying that governmental thwarting of a citizen's constitutional right to bear arms is not a concrete injury—it can be a concrete injury. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012) (stating "[c]onstitutional harms—whether actual or imminent—are sufficient" to constitute a concrete injury). However, we do not weigh in on this issue here as the dismissal of this claim is not challenged on appeal.

> entering or remaining on a premises or other place owned or leased by the governmental entity . . . .

Tex. Gov't Code § 411.209(a). The parties do not dispute that the City is a political subdivision. A political subdivision that violates this provision is liable for a civil penalty of at least $1,000 for an initial violation and $10,000 for subsequent violations. *Id.* § 411.209(b). If the Attorney General determines that legal action is warranted—after conducting an investigation and giving the political subdivision an opportunity to cure the violation—the Attorney General may sue to collect the civil penalty. *Id.* § 411.209(f)-(g). Normally, "[g]overnmental immunity protects the State's political subdivisions, including its cities, against suits and legal liability." *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022). But "to the extent of liability created by" Section 411.209, "[s]overeign immunity to suit is waived and abolished . . . ." Tex. Gov't Code § 411.209(h).

Appellants argue that the City's failure to stop the State Fair from promulgating the firearm ban constitutes an "action" that "states or implies that a license holder who is carrying a handgun under the authority of this subchapter is prohibited from entering or remaining on a premises or other place owned or leased by" the City. *See id.* § 411.209(a). Appellants contend that after fulfilling the required statutory prerequisites, the State properly sued the City to collect the civil penalty. The City Appellees respond that the statutory prerequisites to suit were not met before the State sued and that that Individual Plaintiffs lack standing. City Appellees also respond that governmental immunity barred Appellants' claim because the City took no "action" prohibiting firearms in Fair Park under Section 411.209; rather, only the State Fair took such action. We agree with the City Appellees that the Appellants' Section 411.209 claim is barred by governmental

6

immunity because the City took no prohibited "action" under that provision.[4]

Section 411.209(a) targets actions by political subdivisions stating or implying that license holders carrying handguns are prohibited from entering property owned by political subdivisions. It is undisputed that the prohibition on handguns was promulgated by the State Fair, which the parties agree is not a political subdivision, rather than the City. Appellants do not provide evidence raising a fact issue, let alone conclusively proving, that the City carried out actions in violation of Section 411.209. Section 411.209(h) only waives sovereign immunity "to the extent of liability created by this section." *Id*. Because the City did not engage in the prohibited conduct, it is not liable under that statutory provision. Accordingly, Appellants' Section 411.209 claim is barred by immunity.

Appellants first contend that they provided evidence that the City itself violated Section 411.209, citing a letter the City sent to the Attorney General (the "City's Letter"), which the trial court excluded from evidence. The City's Letter responded to a previous letter sent by the Attorney General (the "Attorney General's Letter") inquiring into a complaint it had received that the State Fair had prohibited a peace officer from carrying a weapon onto State Fair premises. The City's Letter expressed the City's commitment to cooperate "with all state of Texas laws concerning a peace officer's authority to carry a weapon onto the Fair Park premises during the State Fair of Texas." The City's Letter then stated the State Fair operates the fair and that it was attaching a letter from the State Fair (the "State Fair's Letter") expressing the same commitment to cooperate with state law regarding a peace officer's authority to carry a weapon on Fair Park premises.

---

[4] As governmental immunity disposes of this issue, we do not address whether all statutory prerequisites were satisfied prior to filing suit or whether Individual Plaintiffs have standing with respect to their claim against the City.

Contrary to what Appellants claim, the trial court did not abuse its discretion in excluding this evidence because it is not relevant to Appellants' Section 411.209 claim. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Tex. R. Evid. 401. "Irrelevant evidence is not admissible." Tex. R. Evid. 402. The City's Letter does not "make a fact more or less probable than it would be without the evidence." As an initial matter, the City's Letter does not concern prohibiting handguns onto Fair Park grounds under Section 411.209 but the opposite—it concerns allowing such handguns when carried by peace officers. Indeed, the Attorney's General's Letter states that Section 411.209 is inapplicable to peace officers, which the City Appellees do not dispute. The City's Letter does not purport to speak on behalf of the State Fair, instead noting that the State Fair operates the fair and not the City. The State Fair wrote its own letter, which the City attached to the City's Letter. Nothing in the City's Letter indicates that it controlled or otherwise directed the State Fair's response. Accordingly, the trial court's decision to exclude the City's Letter was not "arbitrary or unreasonable" and was in conformance with the rules of evidence. *City of San Benito*, 109 S.W.3d at 757; *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016) ("We review a trial court's exclusion of evidence under the abuse of discretion standard.").

Second, Appellants argue that the City violated Section 411.209 because the State Fair promulgated the handgun ban on City property. Appellants contend Section 411.209's prohibition should be understood as a property right restriction on a political subdivision that passes onto any private entity who leases the property from the City. In support, Appellants cite case law standing for the proposition that a lease cannot grant a lessee a greater estate or right than is owned by the lessor and that Section 411.209 imposes a restriction on the City's property rights. *See, e.g.*,

8

*Geary v. Two Bow Ranch Ltd. P'ship*, No. 04-18-00610-CV, 2020 WL 354763, at *9 (Tex. App.—San Antonio Jan. 22, 2020, pet. denied) (mem. op.) (stating a mineral estate lessor could not lease to lessee a greater mineral estate than it owned). Appellants also cite *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998), recognizing that a home rule city's powers may be limited by statute when the Legislature limits such powers with unmistakable clarity. Appellants contend that the State Fair's handgun ban therefore cannot be implemented on City property. Notably, Appellants do not argue that the State Fair's implementation of the ban itself violates Section 411.209. Rather, Appellants argue that the City's provision of leasehold rights to the State Fair, to the extent the State Fair is relying on the lease terms to enact its handgun ban, constitutes an act by the City in violation of Section 411.209.

This characterization of Section 411.209's prohibition inhering in the property does not follow from the text of Section 411.209, which focuses on prohibiting government conduct. Section 411.209 uses active language to say a state agency or a political subdivision "*may not take any action* . . . that states or implies that a license holder who is carrying a handgun . . . is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity . . . ." Tex. Gov't Code § 411.209(a) (emphasis added). Section 411.209 prevents the City from engaging in conduct prohibiting licensed gun holders from carrying handguns on Fair Park premises. It does not place a restriction on the government property itself.

The Legislature knows how to place restrictions on property. Section 46.03 of the Texas Penal Code, titled "Places Weapons Prohibited," bars the possession of firearms "on the premises of a polling place on the day of an election," "on the premises of any government court or offices utilized by the court," "on the premises of a racetrack," "in an amusement park," and other places. Tex. Pen. Code

9

§ 46.03(a). These prohibitions reside in the properties themselves and are not contingent on the conduct of the owners or possessors of these properties. "When the Legislature expresses its intent regarding a subject in one setting, but, as here, remains silent on that subject in another, we generally abide by the rule that such silence is intentional." *Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 497 (Tex. 2013). Given that the Legislature has placed firearms prohibitions that reside in properties in Section 46.03 of the Penal Code, we assume the Legislature's omission of such property restrictions from Section 411.209 "is intentional."[5] *Id.*

Here, Appellants' argument that the City's leasing Fair Park to the State Fair violates Section 411.209 rests on the contention that Section 411.209's handgun ban prohibition inheres in the City's property. The State Fair's handgun ban is prohibited because it is being enacted on City property and the City in turn is acting unlawfully because it is maintaining a lease where such a ban is in place. Because, as established above, Section 411.209's handgun ban prohibition applies only to the conduct of state agencies and political subdivisions and not private entities, the State Fair's handgun ban does not violate the statute. But even if the State Fair itself had liability here, Appellants acknowledge that the lease itself "is silent regarding license holders carrying handguns on the premises of Fair Park . . . ." "Action" means "doing something." *Action*, BLACK'S LAW DICTIONARY (12th ed. 2024). The lease's silence on this matter amounts to passivity by the City, which is the opposite of "doing something." Accordingly, the City is not violating Section 411.209 by leasing its

---

[5] Appellants assert that the City Appellees and the State Fair take the position that Section 411.209 is inapplicable here because it only applies when a government entity is a lessee on private property. However, neither City Appellees nor the State Fair make this argument. Both agree that Section 411.209 applies to the Fair Park grounds because the City owns it and Section 411.209 undisputedly applies to "premises or other place[s] owned . . . by the governmental entity." What they contest is whether the City engaged in *conduct* violating Section 411.209—a showing required for immunity to be waived for Appellants' claim. Appellants have failed to raise a fact issue that the City has engaged in such violative conduct.

property to the State Fair.

Relatedly, Appellants argue that the City "has implicitly acted to exclude license holders carrying handguns from Fair Park through its tacit ratification of [the State Fair's] exclusionary policy." Appellants argue that the City's shared understanding with the State Fair that the Fair Park lease does not prohibit the State Fair's handgun ban and the City's failure to restrain the State Fair from enacting the ban constitutes an implicit ratification of the State Fair's interpretation of its rights under the lease. Appellants contend this implicit ratification constitutes an action by the City that implies that license holders carrying handguns are prohibited from entering Fair Park grounds in violation of Section 411.209.

"Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate." *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021) (quoting *Wise v. Pena*, 552 S.W.2d 196, 199 (Tex. App.—Corpus Christi–Edinburg 1977, writ dism'd)). "It 'is but an agreement, express or implied, by one to be bound by the act of another performed for him.'" *Id.* (quoting *Dillingham v. Anthony*, 11 S.W. 139, 142 (1889)). Whether one party has ratified changes to a contract requires said party to have the intent to adopt the unauthorized act in question with a full knowledge of the facts. *Id.* In determining whether an implied ratification occurred, courts "look to objective evidence of intent, such as the party's conduct," which requires an examination of the totality of the circumstances. *Id.* at 197. "To avoid undue interference with a party's right to reject contract terms to which he does not agree," *id.*, implied ratification should only be found where words or actions "*clearly* evidenc[e] an intention to ratify." *Id.* at 197 (quoting *Chrisman v. Electrastart of Hous., Inc.*, No. 14-02-00516-CV, 2003 WL 22996909, at *5 (Tex. App.—Houston [14th Dist.] Dec. 23, 2003, no pet.) (mem.

11

op.) (alteration in original)).

Appellants have failed to present evidence raising a genuine issue of fact that would support a finding that the City implicitly ratified the State Fair's handgun ban. The City's Letter responding to the Attorney General's Letter discussed above, does not "clearly evidence" an intention to ratify the State Fair's ban. The City's Letter—and the attached State Fair's Letter—do not pertain to enforcement of the ban. Rather, they express a commitment to allow, not prohibit, peace officers to carry handguns in Fair Park. These letters do not involve any alteration to the terms of the Fair Park lease made by either party through word or deed. Moreover, neither the City's mere agreement with the State Fair's understanding of the lease that it can implement a handgun ban nor the City's lack of action to restrain the State Fair from implementing the ban constitute adoptions of an unauthorized act. As noted earlier, Appellants concede the lease "is silent regarding license holders carrying handguns on the premises of Fair Park . . . ." Appellants in effect contend that the City's inaction as to the State Fair's conduct constitutes an adoption of the State Fair's own actions. But Appellants do not provide evidence of how such inaction, looking at the totality of the circumstances, corroborates an intent by the City to adopt the State Fair's policy.

The evidence in the record in fact points in the other direction. State Fair president Mitchell Glieber testified that "nobody" from the City was involved in the decision-making process in developing the ban, and he denied that the City in any way ever "endorsed, come out and said, we're behind you, we support the policy . . . ." The City in its response to the Attorney General's pre-suit notice also asserted that "[t]he City does not participate in [the State Fair's] decision-making, nor does the City exercise oversight of [the State Fair's] decisions. Similarly, [the State Fair] has sole responsibility for enforcing its rules and regulations regarding the Fair."

12

The City has maintained this position throughout this litigation. Accordingly, we hold that the City Appellees are entitled to summary judgment as a matter of law because governmental immunity bars the State and Individual Plaintiffs' Section 411.209 claim against the City.

Finally, while it is not controlling, we are mindful of then Justice Blacklock's concurrence to the Texas Supreme Court's denial of the State's mandamus petition earlier in this case's history. Then Justice Blacklock concluded that the State's "allegations that the City controls the [State] Fair amount only to scattered and indeterminate financial connections between the entities, not the kind of control that would make the State Fair's decisions about guns imputable to the City." *In re State*, 698 S.W.3d 904, 905 (Tex. 2024) (original proceeding) (Blacklock, J., concurring). Justice Blacklock acknowledged that "[t]he factual landscape could certainly change as this litigation proceeds" but that "at this stage, every indication is that the State Fair's private board made its own decision to prohibit guns at this year's Fair." *Id.* at 905. The problem for Appellants is that the case is now at the summary judgment stage, and the factual landscape has not changed. The City's Letter does not evidence the City's influence on the creation or implementation of the State Fair's gun ban. Rather, Mr. Glieber's testimony and the City's position throughout this dispute indicate the opposite—the decision was made by the State Fair alone. Justice Blacklock concluded at the time that "it [was] not possible for an impartial court to conclude at this stage of the case that anything like" the City's impermissible control or influence over the State Fair's gun policy "ha[d] happened." *Id.* As it was then, so too is it today.

## II. The State Fair is Entitled to Summary Judgment on the State and Individual Plaintiffs' Section 411.209 Claim.

Appellants assert that the State Fair violated Section 411.209 because the

City's failure to prevent the State Fair from implementing the handgun ban and the City's leasing its property to the State Fair while the ban is in place constitute actions by the City in violation of Section 411.029. The State Fair responds that the City did not engage in any action that violates Section 411.209. The State Fair further responds that Individual Plaintiffs lack standing to bring their claim. We hold that the State and Individual Appellants fail to raise a fact issue that the State Fair violated Section 411.209 and that the State Fair is therefore entitled to summary judgment on this claim as a matter of law.

As an initial matter, we examine the State Fair's challenge to Individual Plaintiffs' standing to bring their claims. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 869 (Tex. 2023) ("[T]he court may not move to the merits if even one jurisdictional argument remains unresolved."). "The Texas standing requirements parallel the federal test for Article III standing, which provides that '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (alteration in original) (quoting *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012)). The State Fair argues that Individual Plaintiffs lack standing because they cannot bring a claim under Section 411.209. Specifically, the State Fair contends that Section 411.209 only gives "the attorney general or the appropriate county or district attorney" the authority to "sue to collect the civil penalty" for violating the statute. *See* Tex. Gov't Code § 411.209(g).

The State Fair confuses the issue of standing with the issue of capacity. "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Pike v. Tex.*

14

*EMC Mgmt., LLC*, 610 S.W.3d 763, 775 (Tex. 2020) (quoting *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001)). A plaintiff lacks capacity when he "is not entitled to recover in the capacity in which he sues." *Id.* (quoting Tex. R. Civ. P. 93(2)). Here, the State Fair asserts that Individual Appellants lack the legal authority to bring this suit and that only "the attorney general or the appropriate county or district attorney" may do so. But "[l]ack of capacity is not a jurisdictional defect." *Rodriguez v. Ovation Servs., LLC.*, No. 14-25-00472-CV, 2026 WL 1953530, at *3 (Tex. App.—Houston [14th Dist.] July 7, 2026, no pet. h.) (mem. op.); *Coastal Liquids*, 46 S.W.3d at 884 ("A party must have both standing and capacity to bring a lawsuit. And while standing as an issue cannot be waived, capacity can be."). As the State Fair is not substantively challenging subject matter jurisdiction as to Individual Appellants' claim against the State Fair, we proceed to the merits. *Rattray*, 662 S.W.3d at 869. In proceeding to the merits, we do not address the State Fair's capacity argument today because, even assuming Individual Appellants have capacity, the fact that Section 411.209 does not provide a cause of action against the State Fair that can be brought by *either* the State or Individual Appellants disposes of this issue.

The State and Individual Appellants do not articulate how the State Fair's conduct violates Section 411.209. Appellants argue that the City's failure to stop the State Fair from implementing the handgun ban and maintaining a lease with the State Fair when the ban was in place are violations *by the City*. The State Fair's gun ban serves as the basis for how the City's conduct allegedly violates Section 411.209, but Appellants do not explain how the *State Fair* violated that provision through implementing its ban. As discussed above, *see supra* Part I, Section 411.209 only prohibits the actions of "state agenc[ies]" and "political subdivision[s] of the state" seeking to ban licensed gun holders from carrying handguns on government

property. Tex. Gov't Code § 411.209(a). It does not apply to private entities such as the State Fair.

## CONCLUSION

We affirm the trial court's judgment dismissing Appellants' claims with prejudice.


/s/ April Farris
April Farris
Justice


Panel consists of Chief Justice Brister and Justices Field and Farris.